IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


ERICKA K. FINLEY,                  :
                                   :
    Plaintiff,                     :
                                   :
vs.                                :
                                   :       CIVIL ACTION 13-0151-M
CAROLYN W. COLVIN,                 :
Social Security Commissioner,      :
                                   :
    Defendant.                     :


MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 27). Oral argument was waived in this action (Doc. 26). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health

1

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-one years old, had completed a high school education (Tr. 40), and had previous work experience as a cashier-checker, office clerk, a customer service clerk, and a fast food cahier (Tr. 50-51). In claiming benefits, Plaintiff alleges disability due to a stroke (Doc. 12 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on May 11, 2010 (Tr. 122-29; *see also* Tr. 21). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Finley was capable of performing her past relevant work (Tr. 21-31). Plaintiff requested review of the hearing decision (Tr. 14) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Finley alleges

that:  (1) The ALJ improperly determined that some of her
impairments were not severe; and (2) the ALJ did not properly
consider the opinions and conclusions of one of her treating
sources (Doc. 12).  Defendant has responded to—and denies—these
claims (Doc. 18).  The relevant medical evidence follows.

On January 12, 2010, Dr. Anthony N. Martino examined Finley
for complaints of occasional headaches and some mild weakness of
her right lower extremity; it was noted that she had recently
suffered a mild stroke involving her left hemisphere (Tr. 236-
37).  In reviewing her various medical systems, Plaintiff denied
that she had the following:  "severe headaches, dizzy spells,
fatigue, weakness" (constitutional system); "muscle cramps,
muscle weakness, generalized aches, ankle pain, arthritis, back
pain, cervical disc disease, elbow pain, lumbar disc disease,
joint stiffness, joint swelling, knee pain, neck pain, shoulder
pain, wrist pain, leg cramps, leg pains, migratory arthritis,
muscular weakness and restless leg syndrome" (musculoskeletal
system); and migraines, depression, and anxiety (neurologic
system) (Tr. 236).  Martino did note that Finley had poor
balance; the doctor indicated that she suffered mild right
hemiparesis in conjunction with his assessment of intracerebral
hemorrhage (Tr. 237).  A week later, a CT brain scan, with and
without contrast, was administered that showed that the area
where she had suffered the hemorrhage was replaced with

3

encephalomalacia in the left frontoparietal lobe (Tr. 239).  On February 2, 2010, Martino examined Finley and noted improved right leg function and noted that her hematoma was resolving; he prescribed physical therapy twice a week for six weeks of gait and balance training (Tr. 235).  On May 6, Plaintiff complained of ten-to-twelve migraines weekly, left-sided tingling in her fingers and hand, and right-sided weakness with an inability to sleep on that side; Martino continued with his assessment and prescribed six more weeks of physical therapy (Tr. 234). Martino last saw Plaintiff on July 13 and noted that she had shown slow improvement with the physical therapy (Tr. 326).

On April 15, 2010, Andrea S. Pitts, CRNP, examined Plaintiff for complaints of numbness and right lower leg pain; she had a headache but was not feeling tired or poorly (Tr. 221-31).  Pitts noted that Finley was in no acute distress; the musculoskeletal system was normal.  Plaintiff noted numbness in her right arm and leg and that the bottom of her feet felt like pins and needles; reflexes and cranial nerves were normal.  A motor exam demonstrated no dysfunction; no coordination or cerebellum abnormalities were noted.  The Nurse's assessment was migraine headache, stroke syndrome, and echo virus neurologic. On June 18, Plaintiff complained of a vaginal discharge for which she received prescriptions and instructions (Tr. 292-93). On July 1, Finley was seen for a headache; she noted that

medication was "helping with nerve pain to [her] right leg and side" and that her stiffness and right-sided weakness was improving with physical therapy (Tr. 289).  In reviewing her systems, the CRNP noted that Finley reported no back pain, no localized joint pain, or depression; on her neurological exam, Pitts noted cogwheel rigidity on the right, abnormal reflexes, and that the motor exam demonstrated dysfunction (Tr. 290).  The assessment was headache and stroke syndrome; Elavil[1] and Flexeril[2] were prescribed (Tr. 291).  On July 29, 2010, Finley reported that her headaches had decreased from two a day to twice weekly; she did not have a headache at that time (Tr. 287-89).  Plaintiff had no back pain, localized joint pain, or depression; her neurological exam was normal.  Pitts' assessment was recent weight gain.  On October 28, Finley complained that her Elavil was making her depressed and tearful; the CRNP indicated, however, that everything in the examination was normal (Tr. 284-86).  Nevertheless, her assessment was headache, obesity, migraine headache, and peripheral neuropathy; Topomax[3] was added to her medication regimen.

---

[1] **Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).

[2] **Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[3] *Topomax* is used in the treatment of migraine headaches.  **Error! Main Document Only.***Physician's Desk Reference* 2378-79 (62nd ed. 2008).

On October 28, Pitts completed a Pain Form in which she indicated that Plaintiff's neuropathy would cause her pain that would distract her from adequately performing her daily activities or work, that physical exercise would greatly increase her pain, distracting her from what she was doing, and that medication side effects would be severe and limit her effectiveness (Tr. 277-78). Pitts further stated that Finley was incapable of "gainful employment on a repetitive, competitive and productive basis over an eight hour work day, forty hours a week, without missing more than 2 days of work per month" (Tr. 278). On that same date, the CNRP also completed a Migraine Questionnaire that indicated that Plaintiff experienced headaches four-to-five times a week, each lasting up to an hour, and that medications did not help; symptoms included dizziness and blurred vision (Tr. 279-81). Pitts further stated that the headaches caused depression and anxiety and would cause her to be moderately impaired in her daily activities; her concentration would be affected often.

On December 29, 2010 Finley admitted to Pitts that she was not taking her headache medication as prescribed, saying that they made her sleepy; she also complained of anxiety, high irritability, and depression (Tr. 282-84). On examination, Pitts noted nothing abnormal; she added Dysthymic disorder to her assessment and adjusted the dosage of her headache medicine.

6

On January 26, 2011, Finley was seen for her annual gynecological exam (Tr. 313-16). On March 22, 2011, Plaintiff complained of dizziness; she stated that she had "intermittent headaches, but for the most part they are controlled with her prescribed meds;" Finley reported no depression (Tr. 311). Pitts noted peripheral neuropathy in the right foot (Tr. 312). On May 3, 2011, Plaintiff complained of depression; Lexapro[4] was prescribed (Tr. 308-10).

On April 14, 2011, Finley reported to the University of South Alabama Department of Neurology, complaining of swallowing problems, dizziness, weakness, headaches, memory loss, and depression (Tr. 337). Plaintiff complained of daily headaches, lasting up to an hour, with mild photophobia and phonophobia. Her Neurontin[5] prescription was increased; doxepin was also prescribed. This concludes the relevant evidence of record.

Finley first claims that the ALJ did not properly consider her impairments. More specifically, she argues that her peripheral neuropathy, hemiparesis, anxiety, and depression were severe (Doc. 12, pp. 2-4).

In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984),

---

[4] *Lexapro* is indicated for the treatment of major depressive disorder. **Error! Main Document Only.** *Physician's Desk Reference* 1175-76 (62nd ed. 2008).

[5] **Error! Main Document Only.** *Neurontin* is used in the treatment of partial seizures. *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf.* 20 C.F.R. § 404.1521(a) (2013).[6] The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

In his determination, the ALJ found that Finley's anxiety and depression did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [were] therefore nonsevere" (Tr. 26). In reaching this decision, the ALJ reviewed the four broad functional areas for

---

[6]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

8

evaluating mental disorders and found Plaintiff to only have mild limitation in concentration, persistence, or pace (Tr. 26). The Court notes that Plaintiff regularly reported no depression in her examinations by CRNP Pitts; furthermore, she did not seek or receive any treatment for either her depression or anxiety. Finally, Finley has not pointed to any evidence demonstrating that the anxiety or depression interfered with her ability to work. The Court finds substantial support for the ALJ's conclusion that Plaintiff's anxiety and depression were not severe impairments.

The ALJ did not specifically make a finding that Finley's peripheral neuropathy was severe or not severe, though he did note that the records did not "substantiate any significant or persistent peripheral neuropathy" (Tr. 28). The Court found no specific statement regarding her hemiparesis. The Court will proceed with the presumption that no finding is a finding of non-severity.

The Court notes that Neurologist Martino diagnosed Finley to have hemiparesis on January 12, 2010. The doctor examined Finley four times over a six-month period, maintaining the diagnosis, while reporting slow improvement; Plaintiff has apparently not seen Dr. Martino since July 2010, fourteen months before the ALJ's decision (*see* Tr. 326-36).

The notes from Nurse Pitts show that although Plaintiff

9

complained of right-sided weakness in their first meeting, Pitts noted no abnormalities or dysfunction and did not diagnose these impairments (Tr. 221-23).  The first diagnosis of peripheral neuropathy was not made until October 2010, six months after the initial examination; even at that time, however, the CNRP noted no musculature or neurological abnormalities (Tr. 284-86).  The diagnosis continued through Pitts' treatment notes, though no specific findings were included in those notes to support the diagnosis (*see* Tr. 282-84, 308-16).

Although Finley has supplied diagnoses of these impairments, she has not pointed to medical notes that provide evidence that they interfere with her ability to work as required in *Brady*.  In spite of Plaintiff's complaint that the ALJ "cited no acceptable medical evidence to support his decision that those conditions are not severe impairments" (Doc. 12, p. 4), the Court reminds Finley that the burden is on her to prove that she is disabled.  *See* 20 C.F.R. § 416.912(a) (2013); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The Court finds no merit in Plaintiff's claim that the ALJ improperly found that some of her impairments were not severe.

Finley next claims that the ALJ did not properly consider the opinions and conclusions of one of her treating sources. Plaintiff more specifically asserts that the ALJ improperly rejected the conclusions put forth by CRNP Pitts in her Pain

Form and Migraine Questionnaire (Doc. 12, pp. 4-7).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[7] *see also* 20 C.F.R. § 404.1527 (2013).

In his determination, the ALJ gave substantial weight to the evidence in Pitts' treatment notes, but rejected her conclusions in the Pain Form and the Migraine Questionnaire (Doc. 28-29).  In reaching this decision, he stated that the CRNP had overstated Plaintiff's pain in the Pain Form based on her treatment notes and those of the neurologists (Tr. 28).  He went on to note that the "limitations set forth in the migraine questionnaire [] seem greatly disproportionate to and inconsistent with the objective medical findings described in the treatment notes" (Tr. 28).  Following those statements, the ALJ pointed out the inconsistencies between her conclusions in the Form and Questionnaire and her treatment notes.  The ALJ also pointed out that Pitts' conclusions were inconsistent with the other medical evidence of record.  The Court finds

---

[7]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

11

substantial support for the ALJ's determination and finds no merit in the Plaintiff's claim otherwise.

Finley has raised two different claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 12th day of December, 2013.

<u>s/BERT W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE